# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT ERIC LUELLEN,**

        **Plaintiff,**

***vs*.**
                                **CIVIL ACTION NO. 1:10CV203**

**ROBIN CASKIE GULICK, individually;**
**HUNTLEY THORPE, individually;**
**KAREN HENDRICKS, individually;**
**JONATHAN CLARK, individually, and**
**GULICK, CARSON & THORPE, PC,**

        **Defendants.**

## REPORT AND RECOMMENDATION/OPINION

Currently pending before this Court is Defendants Robin Caskie Gulick, Huntley Thorpe, Karen Hendricks, Jonathan Clark, and Gulick, Carson,& Thorpe, PC's ("Defendants") "Motion to Dismiss for Lack of Personal Jurisdiction," filed May 11, 2011, [DE 37].[1] Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) an Order was entered by the Court advising Plaintiff Scott Eric Luellen ("Plaintiff"), appearing *pro se*, that he had the right to file counter-affidavits or other material responsive to the motion within thirty (30) days. On May 24, 2011, Plaintiff filed his "Objections to Motion to Dismiss" [DE 43] and "Motion for Limited Jurisdictional Discovery" [DE 44]. On May 31, 2011, Defendants filed their "Reply to Plaintiff's Objections to Defendants' Motion to Dismiss" [DE 46] and "Response to Plaintiff's Motion for Limited Jurisdictional Discovery" [DE 47]. On June 27, 2011, Plaintiff filed "Motion for Sanctions Under Fed.R.Civ.P. 11 [DE 63], and on June 29, 2011, Defendants filed their Response to the Motion [DE 65]. This case was referred to the undersigned United States Magistrate Judge on December 13, 2010 [DE 7]. The

---

[1]Defendants are appearing specially at this time solely to assert lack of personal jurisdiction.

undersigned has reviewed the record and the arguments of the parties and, for the reasons set out below, **RECOMMENDS** that the motion to dismiss be **GRANTED** and **ORDERS** the Motion for Limited Jurisdictional Discovery and the Motion for Sanctions be **DENIED**.

## I. FACTUAL ALLEGATIONS

This case arises out of a Virginia lawyer's alleged slander, defamation, negligence, and fraud under Virginia law. As Plaintiff states in his Introduction to his Amended Complaint, "This case is about an attorney engaged in protracted acrimonious litigation who made deliberate and reckless false statements to a federal agent about his opponent imputing he committed criminal offenses." [DE 21 at Introduction].

On April 14, 2008, United States Secret Service ("USSS") Special Agent Anthony Saler ("SA Saler") filed an affidavit and complaint under seal to United States Magistrate Judge Thomas Rawles Jones, Jr. in the District of Columbia. Id. at 13. The affidavit was in support of a Criminal Complaint alleging that on or about June 2007, in the Eastern District of Virginia, Plaintiff did, in relation to violating 18 U.S.C. 1029 (fraud and related activity in connection with access devices), knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, in violation of Title 18 United States code, Section 1028A. Id. at Ex. 1.

The "Facts" section of Plaintiff's Complaint further provides as follows:

14.     SA Saler alleged in his affidavit and complaint that: "[o]n January 30, 2008, Luellen signed a promissory note in which he agreed to pay $36,000 to NM Financial with applicable interest by February 1, 2010," (Exhibit 1, page 11, paragraph 36).

15.     SA Saler further swore: "[u]nder the terms of the note, Luellen is in default of [sic] any statement or representation made by him to NM Financial was false or misleading in any material respect," (Exhibit 1, page 11, paragraph 37).

16.     SA Saler also swore that "Luellen asked the Chairman of the Stream-Center [Inc.] Board of Directors [sic] if he could obtain additional funds...Luellen also said that he needed money

for his legal expenses," (Exhibit 1, page 10, paragraph 33).

17. Mr. Gulick and his firm, Gulick, Carson &Thorpe, have been representing Mr. Luellen's ex-wife continuously in on-going litigation from 2003 through present.

18. The stated purpose of SA Saler's affidavit and complaint was "Luellen's Misleading Representations to Obtain a Loan," (Exhibit 1, page 10, paragraph 0)

19. SA Saler used Mr. Gulick's statement(s) in his sworn complaint to US Magistrate Jones as follows:

> "I have spoken to the attorney who represents Luellen's ex-wife. He has stated that Luellen has represented himself continuously in all legal proceedings since the Fall [sic] of 2005," (Exhibit 1, page 11, paragraph 38) [emphasis added].

20. From June 16, 2006 through approximately April 2007, Mr. Luellen was represented in any and all family law matters by Ms. Monica Chernin of Culpeper, Virginia.

21. From September to October 2006, Mr. Luellen was represented in other matters by the Washington DC law firm of Trout Cacheris.

22. From October 2006 through April 2008, Mr. Luellen was represented in other matters by the Washington SC law firm of O'Connor & Hannan.

23. From approximately November 2007 through April 2008, Mr. Luellen was represented by the international law firm of Winston & Strawn.

24. Mr. Luellen retained Monica Chernin of Culpeper, Virginia as counsel on June 16, 2006 via check number 1651 for $10,000 drawn on Wachovia Bank Account number 10101284638XX in the name of Scott Luellen.

25. Mr. Gulick knew Ms. Chernin and other firms represented Mr. Luellen because she wrote Mr. Gulick in June and July 2006 telling him so; worse yet, Mr. Gulick acknowledged her letters with letters of his own in response.

26. Worse yet, Mr. Gulick repeatedly spoke via telephone with Ms. Chernin as Mr. Luellen's counsel in 2006.

27. Worst of all, Mr. Gulick argued opposite Ms. Chernin representing Mr. Luellen in the Fauquier County Circuit Court in Virginia in 2006.

28. As a direct result and/or proximate cause of SA Saler's affidavit and complaint based on Mr. Gulick's misrepresentations, US Magistrate Jones issued an arrest warrant for Mr. Luellen on April 11, 2008, a copy of which is attached as Exhibit 2, included here by reference.

29. The USSS arrested Mr. Luellen on Friday, April 11, 2008 at his home at 310 3rd Street, SE, Washington, DC on the warrant Saler secured.

30. Mr. Luellen was detained for all or part of five (5) days in the maximum-security wing of the DC central jail.

31. Mr. Luellen was denied a telephone call for four (4) days despite his repreated [sic] requests and constitutional right.

32. The USSS booked Mr. Luellen into the DC jail under a false name – derived by mixing around his legal names – and as a result, his attorneys could not locate him.

33. A senior attorney of the Department of Homeland Security (DHS) who was a personal friend of Mr. Luellen's used her national-security credentials in an attempt to find him.

34. The manner and handling of Mr. Luellen's arrest and detention equated to a domestic extraordinary rendition.

35. While Mr. Luellen was detained, Assistant US Attorney (AUSA) G. Derek Andresen of the Eastern District of Virginia at Alexandria e-mailed Robert Adler, Mr. Luellen's counsel at O'Connor & Hannan, and stated he "had his boy."

36. AUSA Andresen stated in his e-mail that the purpose of his detention was not administrative but to cause Mr. Luellen 'pain.'

37. AUSA Andresen threatened in his e-mail that he would cause Mr. Luellen 'maximum pain' unless Mr. Luellen signed a plea Andresen had written in another matter.

38. Mr. Luellen, under threat of pain by government agents, was coerced into signing a false plea that resulted in an 84-month prison sentence, which Mr. Luellen is now serving.

39. On June 19, 2009, the US District Court for the Eastern District of Virginia at Alexandria agreed to reconsider the conviction because of evidence of actual innocense, due-process violations, intervening Supreme Court case law and prosecutorial misconduct; however, he continues to serve the sentence until the Court rules.

40. The coerced plea flowed directly from the pressures from the arrest caused by Mr. Gulick's misrepresentations to the government, where-after the government dismissed the original case spurred by Gulick.

41. AUSA Andresen used Mr. Gulick's false statement(s) as the basis for detaining Mr. Luellen in a maximum-security prison, under a false name, without medication or a telephone call to coerce the plea for which Mr. Luellen is now serving an 84-month sentence.

42. To date, Mr. Luellen has served 27.25 months in a federal prison.

43. Attorney General Holder, then a partner at Covington & Burling, advised Mr. Luellen on the record the conduct was 'improper.'

44. Paul Knight, private White House counsel, leader of the Justice Department's major-crimes division and President of the DC Bar, characterized the case as "improper at best, illegal at worst."

45. Mr. Luellen wrote Mr. Gulick on or about October 4, 2010 noticing the misconduct, his intent to file suit and demanding damages and to notify his insurance carrier(s), attached as exhibit 3, included by reference here.

46. Mr. Luellen sent Mr. Gulick and his firm a second notice, demand letter and intent to file suit in mid-October 2010 again asking him to notify his insurance carrier(s).

47. Mr. Gulick refused to respond to either demand or notice.

## II. PROCEDURAL HISTORY

On December 10, 2010, Plaintiff, *pro se*, Scott Eric Luellen filed his Complaint in this Court against Defendants Gulick and Gulick, Carson & Thorpe, PC [DE 1]. That same date, he filed a Motion for Leave to Proceed *in forma pauperis* and a Motion to Amend Defendants [DE 2 and 4, respectively]. Motion to proceed *in forma pauperis* was granted on January 3, 2011, and initial filing fee was paid on January 24, 2011 [DE 12 and 14].[2] Plaintiff's Motion to Amend Defendants was granted on February 16, 2011 [DE 16] and Defendant filed his Amended Complaint on March 11, 2011, adding as defendants Huntley Thorpe, Jonathan Clark, and Karen Hendricks [DE 21]. On May 11, 2011, Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction [DE 37]. The Court entered and mailed to Plaintiff a Roseboro notice on May 12, 2011 [DE 38]. Plaintiff filed his Objection to Motion to Dismiss on May 24, 2011 [DE 43], along with his Motion for Limited

---

[2]Pursuant to 28 U.S.C. section 1915, Plaintiff, an inmate at FCI Morgantown, was ordered to pay an initial filing fee of $12.32.

Jurisdictional Discovery [DE 24]. On May 31, 2011, Defendants filed their Reply in support of their Motion to Dismiss [DE 46] as well as their Response in Opposition to Motion for Limited Discovery [DE 47].

## III. DISCUSSION

### A. The Parties' Contentions

Defendants state two bases in support of their 12(b)(2) motion, namely that: (1) they have not conducted any activities which would fall within the scope of West Virginia's long arm statute, and (2) even if the West Virginia long arm statute were satisfied, these defendants do not have such minimum contacts with West Virginia such that this Court may constitutionally assert personal jurisdiction over them.

Plaintiff argues that "(1) defendants have successfully solicited and accepted money from West Virginians to represent them in Virginia courts, contrary to their conclusory denials; and (2) the complaint avers defendants are engaged in an on-going tort against Mr. Luellen while he is domiciled in West Virginia."

### 1. Rule 12(b)(2) Standard

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction. See Carefirst of Md., Inc. v. Carefirst Pregnancy Crisis Ctrs., Inc., 334 F.3d 390, 396, (4th Cir.2003)("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff."). Ultimately, plaintiffs must establish personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. V. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir.2005); Carefirst of Md., Inc., 334 F.3d at 396. At this stage in the case, however,

the plaintiff must establish a <u>prima</u> <u>facie</u> case for the exercise of personal jurisdiction by pointing to affidavits or other relevant evidence. <u>See</u> <u>New Wellington Fin. Corp.</u>, 416 F.3d at 294; <u>Carefirst of Md., Inc.</u>, 334 F.3d at 396.

A plaintiff must make two showings to establish personal jurisdiction over a non-consenting, non-resident defendant. First, a plaintiff must show that a statute makes the defendant amenable to process. <u>See</u> <u>e.g.</u>, <u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273 (4th Cir.2009) ("A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment."); <u>see</u> <u>also</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). Second, maintenance of the suit in the forum at issue must be consistent with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the United States Constitution. <u>Int'l Shoe Co.</u>, 326 U.S. at 320.

Where, as here, the district court addressed the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, without a hearing, the plaintiff bears the burden only of making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. <u>Combs v. Bakker</u>, 886 F.2d 673 (4th Cir. 1989).

**a. West Virginia long-arm statute**

West Virginia's long-arm statute extends to the constitutional maximum permitted by the Due Process Clause. W.Va.Code Section 56-3-33; <u>see</u> <u>also</u> <u>Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.</u>, 294 F.Supp.2d 823, 827 (N.D.W.Va.20033). Thus, in West Virginia, the issue of personal jurisdiction is simple: whether the exercise of personal jurisdiction would comport

with the Due Process Clause. See Williams v. Adver. Sex LLC, 2007 WL 2570182, at *3 (N.D.W.Va. Aug. 31, 2007); see also Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). To comport with the Due Process Clause, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Md., Inc., 334 F.3d at 397 (quoting Int'l Shoe, 326 at 316); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-77 (1985).

**b. Minimum Contacts**

The Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Acan, Inc. v. Digital Serv. Consultations, Inc., 293 F.3d 707 (4th Cir.2002).

The first prong articulates the minimum contacts required of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state. While this requirement is not susceptible of mechanical application, see Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154; Kulko v. Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), courts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment. In the business context, these factors include, but are not limited to:

- whether the defendant maintains offices or agents in the forum state, see McGee v. Int'l Life Ins Co., 355 U.S. 220, 221, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957);

- whether the defendant owns property in the forum state, <u>see</u> <u>Base Metal Trading, Ltd. v. OJSC,</u> 283 F.3d 208, 213 (4th Cir.2002);

- whether the defendant reached into the forum state to solicit or initiate business, <u>see</u> <u>McGee,</u> 335 U.S. at 221, 78 S.Ct. 199; <u>Burger King</u>, 471 U.S. at 475-76, 105 S.Ct. 2174;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state, <u>see</u> <u>Burger King</u>, 471 U.S. at 475-76, 481, 105 S.Ct. 2174;

- whether the parties contractually agreed that the law of the forum state would govern disputes, <u>see</u> <u>Burger King</u>, 471 U.S. at 481-82, 105 S.Ct. 2174

- whether the parties made in-person contact with the resident of the forum in the forum state regarding the business relationship, <u>see</u> <u>Hirschkop & Grad, P.C. v. Robinson</u>, 757 F.2d 1499, 1503 (4th Cir.1985);

- the nature, quality and extent of the parties' communications about the business being transacted, <u>see</u> <u>English & Smith</u>, 901 F.2d at 39; and

- whether the performance of contractual duties was to occur within the forum, <u>see</u> <u>Peanut Corp. of Am. v. Hollywood Brands, Inc.</u>, 696 F.2d 311, 314 (4th Cir.1982).

<u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273 (4th Cir. 2009).

Through an analysis of such factors, if a court finds that the defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists. "[B]ecause [the defendant's] activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." <u>Burger King</u>, 471 U.S. at 476, 105 S.Ct. 2174 (internal quotation marks omitted). If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three. <u>See</u> <u>Id</u>.

Defendants attached affidavits to their Motion to Dismiss stating under oath that: 1) they are all residents of Virginia; 2) they are not authorized or licensed to transact business in West Virginia; 3) they do not transact business in West Virginia; 4) they do not have an interest in, possess or use

any real property in the State of West Virginia; 5) they maintain no offices in West Virginia; 6) they have no bank accounts in West Virginia; 7) they do not contract to supply services or things in West Virginia; 8) they do not regularly sell any product or service in West Virginia or otherwise regularly do business in West Virginia; 9) they do not regularly solicit business in West Virginia; 10) they do not engage in any other persistent course of conduct relative to West Virginia; 11) they do not render services in West Virginia; 12) they have never contracted to insure any person, party, or risk located within West Virginia at the time of contracting; and 13) they have never, to their knowledge, caused tortious injury by an act or omission in West Virginia.

The only factor from Geometric that Plaintiff expressly addresses is "whether the defendant reached into the forum state to solicit or initiate business." see McGee, 335 U.S. at 221, 78 S.Ct. 199; Burger King, 471 U.S. at 475-76, 105 S.Ct. 2174. He does not dispute in his Response that Defendants have no offices in West Virginia, are not licensed to practice in West Virginia, own no property in West Virginia, and did not deliberately engage in significant or long-term business activities in West Virginia. The undersigned finds it is indisputable that Defendants did not contractually agree that West Virginia law would govern disputes or that performance of contractual duties was to occur within West Virginia.

Plaintiff states he "verily believes" Defendants have successfully solicited business in West Virginia and contracted and provided services to West Virginia clients. He expressly bases this "belief" on two "facts":  (1) "defendants' proximity to West Virginia only 40 or so miles east of the state line; and, (2) because of the results of a private investigation."

On a Motion to Dismiss a court may consider "the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice" without converting the

motion into a Motion for Summary Judgment. <u>Pennington v. Teufel</u>, 396 F.Supp.2d 715 (N.D.W.Va. 2005).

A review of the West Virginia State Bar membership indicates none of the attorney-defendants are licensed to practice in West Virginia. As to Plaintiff's "fact" that Defendant's offices are "only" 40 miles from the West Virginia border, the only locations in West Virginia in that approximate distance are located in this district, and a review of this district's attorneys indicates none of the defendants has appeared in this district, even *pro hac vice*.

Regarding the "results of a private investigation," Plaintiff states:

> In 2006, Mr. Luellen believed defendants had conspired to assist his former spouse hide [sic] assets to defraud him and the divorce court and had received and hid stolen property. Therefore, Mr. Luellen hired the prominent investigative law firm International Legal Group (ILG) run by former Watergate investigator Terry Lenzer. <u>It is Mr. Luellen's understanding and recollection</u> that investigation discovered, among other things, that defendants had represented West Virginia parties on more than one occasion. Mr. Luellen intends to evidence this by discovery of client names and addresses that are non-privileged and part of the public court record.

(Emphasis added). First, Plaintiff does not support this contention in any manner. He submits no documentation from this investigation, even a copy of an email or letter, nor any affidavit from anyone associated with ILG. The undersigned finds Plaintiff's allegations that Defendants solicited business in West Virginia and/or contracted to supply services to parties in West Virginia are purely speculative.

Further, from Plaintiff's own pleadings, it is clear that Defendants had not "made in-person contact with the resident of the forum in the forum state regarding the business relationship." <u>See Hirschkop & Grad, P.C. v. Robinson</u>, 757 F.2d 1499, 1503 (4th Cir.1985). While Plaintiff argues that he wrote Defendants twice while he was incarcerated in West Virginia, he expressly states that Defendants did not respond.

Plaintiff moves the Court for limited jurisdictional discovery to explore jurisdictional facts. He correctly argues that a plaintiff's well-pled allegations are accepted as true in resolving a motion to dismiss. He also asserts:

> Nor can Mr. Luellen's allegations be considered conclusory because they are based on an extensive investigation by an internationally acclaimed investigative law firm, one even reportedly used by the Executive Office of the President.

As already noted, however, Plaintiff fails to support this statement with even an iota of evidence. No documents from the investigative law firm, no affidavits, not even a letter acknowledging that he had been a client. Plaintiff presumably would not need the Court's permission to obtain this type of evidence as Plaintiff should either be in possession or control of such evidence or be able to contact the firm of which he professes to have been a client.

The remainder of Plaintiff's arguments that he is entitled to jurisdictional discovery are based purely on what was <u>not</u> sworn to in the defendant's affidavits. Plaintiff argues the defendants "conceded" they advertised, transacted business, and contracted to supply services to clients in West Virginia because they only stated that they did not do so "regularly." "By the defendants swearing they have not 'regularly' transacted business in West Virginia or represented West Virginia clients, it clearly implies that they have done so 'irregularly," otherwise there is no need for the qualification of 'regularly.'" The undersigned finds Plaintiff's argument consists of faulty logic and implication and finds Defendants made no such "concession." Clearly, as attorneys, Defendants would need to be licensed in the State of West Virginia to practice in West Virginia. While they may represent or may have represented West Virginia clients in Virginia, this does not indicate they "purposefully avail[ed] [themselves] of the privilege of conducting business under the laws of the forum state [West Virginia]. <u>ALS Acan, Inc. v. Digital Serv. Consultations, Inc.</u>, 293 F.3d 707, 712 (4th

Cir.2002). Further, W.Va.Code section 56-3-33 refers to all acts in the present tense, as did Defendants. The only acts Defendants stated they did not perform "regularly" were selling any product or service or otherwise doing business in West Virginia, and soliciting business in West Virginia. These two statements correspond with (4) and (5) of the Code section, which provide for personal jurisdiction due to:

> (4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumes or services rendered in this state; and

> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonable have expected such person to use, consume or be affected by the goods in this state: *Provided*, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

(Emphasis added). The undersigned finds Defendants simply followed the language contained in the code section in writing their affidavits.

Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. Mylan Labs, Inc. v. Akso, N.V., 2F.3d 56 (4th Cir. 1993). At the same time, however, district courts have broad discretion in their resolution of discovery problems that arise in cases pending before them. Id. When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery. See McLaughlin v. McPhail, 707 F.2d 800 (4th Cir. 1983)(holding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" ALS Scan, supra, at n. 3 (upholding district court's refusal to allow plaintiff to

engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions"); see also Rich v. KIS Cal., Inc., 121 F.R.D. 254 (M.D.N.C. 1988)([[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.")

The undersigned finds Plaintiff's claims of personal jurisdiction are conclusory and based on bare allegations in the face of specific denials by Defendants. As already noted, if Plaintiff had had an actual investigation performed by a firm, which investigation he believed indicated Defendants had transacted business in West Virginia, he would not need discovery from Defendants to attempt to make a *prima facie* showing of jurisdiction. He need only submit affidavits from that firm. Defendants filed their motion to dismiss on May 11, 2011. Plaintiff filed his motion for limited jurisdictional discovery on May 22, 2011. Plaintiff had sufficient time to contact the investigative firm or to find on his own documents, letters, or the report itself that he believed showed Defendants represented West Virginians. Plaintiff offers not a shred of evidence that Defendants "purposefully availed [themselves] of the privilege of conducting business under the laws of [West Virginia]" and instead "offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." See McLaughlin v. McPhail, 707 F.2d 800 (4th Cir. 1983

The undersigned therefore **DENIES** Plaintiff's "Motion for Limited Jurisdictional Discovery."

The undersigned finds that the defendants have not availed themselves of the privilege of conducting business in West Virginia. Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (internal

quotation marks omitted). The undersigned therefore finds that the plaintiff has not satisfied the first prong of the test for specific jurisdiction and the undersigned need not move on to a consideration of prongs two and three. See Id.

Even if, *arguendo*, Plaintiff satisfied the first prong of the test, he would not satisfy the second– that his claims arise out of activities directed at West Virginia. This prong permits the court to exercise personal jurisdiction over a non-resident defendant acting outside the forum when the defendant intentionally directed his tortious conduct toward the forum state, knowing that that conduct to would do harm to a forum resident. Carefirst of Md. Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390 (4th Cir. 2003). This is referred to as the "effects test" and "is typically construed to require that the Plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Id. at 398 n. 7 .

Here, for purposes of this motion, the undersigned accepts as true Plaintiff's claims that Defendants committed acts of slander, defamation, negligence, and fraud against him, acts that would be considered intentional torts.

The undersigned cannot find, however, under any interpretation of the complaint, that Defendants "expressly aimed [their] tortious conduct at [West Virginia], such that [West Virginia] can be said to be the focal point of the tortious activity." Plaintiff alleges in the Complaint that Defendant Gulick told Special Agent Saler that Luellen had represented himself continuously in all legal proceedings since the Fall of 2005, whereas, in truth, Gulick knew Plaintiff had been represented by counsel. The Complaint then states: "As a direct result and/or proximate cause of SA

15

Saler's affidavit and complaint based on Mr. Gulick's misrepresentations, US Magistrate Jones issued an arrest warrant for Mr. Luellen on April 11, 2008 . . . ." Plaintiff was arrested on this warrant, and detained in the DC central jail in violation of his constitutional rights. While Plaintiff was detained in Washington, DC, the AUSA threatened in an email to Plaintiff's counsel that the purpose of his detention was to cause him pain, and that he would cause him "maximum pain" unless he signed a plea agreement in another matter. Plaintiff, under this threat of pain by government agents, was coerced into signing a false plea that resulted in an 84-month prison sentence, which he is now serving at FCI Morgantown.

Even taking these allegations as true, it cannot be said that Defendant Gulick "expressly aimed his tortious conduct" at West Virginia. None of these events occurred in West Virginia or had any connection whatsoever to West Virginia. Luellen was not in West Virginia at the time the alleged events took place, and presents no evidence that he had ever been in West Virginia prior to his incarceration. Although unnecessary to this finding, the undersigned additionally takes judicial notice of the Criminal Information to which Defendant, who was represented by counsel, pled guilty in May 2008, charging him with "Engaging in a Monetary Transaction with Money from Unlawful Activity," in that:

> On or about October 11, 2004, LUELLEN engaged in a scheme and artifice to defraud investors by making material false representations concerning a real estate development project in Seaford, Delaware . . . .

Plaintiff was sentenced for this crime in August 2008. He was sentenced to a term of imprisonment of 84 months and $1,699,872.00 restitution.[3] The Court recommended he be designated to FCI

---

[3]Although Plaintiff states in his Complaint that he was coerced into signing this "false plea," and that the US District Court for the Eastern District of Alexandria agreed to reconsider the conviction "because of evidence of actual innocence, due-process violations, intervening

Morgantown "to be near his family." The undersigned finds the statements allegedly made by Defendant Gulick, which resulted in Plaintiff's arrest in an entirely different case, are therefore even more remote from the State of West Virginia. The undersigned cannot find any set of facts, even accepting all of Plaintiff's allegations as true, which would indicate Gulick would even have been aware of the second case, to which Plaintiff pled, or anticipate Plaintiff would be prosecuted, plead guilty, and subsequently be incarcerated in West Virginia.

Plaintiff attempts to get around this jurisdictional problem by stating in his Complaint that he wrote to Defendant Gulick on or about October 4, 2010, notifying Gulick of his misconduct, his intent to file suit and demanding damages, and advising him of his duty to notify his insurance carrier. Plaintiff sent Defendant Gulick and his firm a second notice, demand letter and intent to file suit in mid-October, again asking him to notify his insurance carrier. Gulick failed to respond to either demand or notice. Plaintiff therefore argues that Defendants "are knowingly engaged in on-going misconduct that constitutes a continuing undertaking under Virginia law." He further argues that, as attorneys, Defendants had a legal duty to correct or remedy their tortious conduct. Even if his argument were correct, and the undersigned makes no such finding, there is no merit to Plaintiff's argument that these "acts" (actually non-acts) were directed at West Virginia because he is domiciled in West Virginia. The undersigned finds Plaintiff is not a domiciliary of West Virginia.

In an unpublished opinion, Roberts v. Morchower, 956 F.2d 1163 (4th Cir. 1992), the Fourth

---

Supreme court case law and prosecutorial misconduct," the record in the case does not indicate he filed an appeal, but only a motion under 28 U.S.C. section 2255. The undersigned could find no representation in the voluminous documents that stated he pled guilty under duress due to the dismissed criminal complaint which relied in small part, on Gulick's one statement. Neither the plea nor the sentence has been reversed at this time, more than three years after the plea was entered.

Circuit held:

> For diversity jurisdiction purposes, a prisoner's domicile is presumed to be where he was domiciled prior to incarceration. _Polakoff v. Henderson_, 370 F.Supp. 690 (N.D.Ga. 1973), _aff'd,_ 488 F.2d 977 (5th Cir. 1974). Although this presumption may be rebutted by an inmate's intention to change domicile, _see Jones v. Hadican,_ 552 F.2d 249 (8th Cir.), _cert. denied_, 431 U.S. 941 (1977), Roberts has not pled such an intent on the face of his complaint. The district court properly dismissed the complaint for lack of jurisdiction under 28 U.S.C. section 1332 (1988) and we affirm.

In a recent case, another Court within the Northern District of West Virginia held:

> District courts also have original jurisdiction in all civil actions when a matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. section 1332. The plaintiff wishing to bring suit in federal court has the burden of proving complete diversity and the requisite amount in controversy. _See Richmond, Fredericksburg & Potomac R. Co. v. United States,_ 945 F.2d 765, 768 (4th Cir. 1991). When considering diversity for jurisdictional purposes, a prisoner's domicile is presumed to be where he was domiciled prior to incarceration. Where the inmate demonstrates an intention to change domicile, the presumption is rebuttable. _See Jones v. Hadican_, 552 F.2d 249 (8th Cir. 1977).

Schuch v. Cipriani, 2006 WL 1651023 (N.D.W.Va. 2006).

To rebut the presumption that he retains the preincarceration domicile, a prisoner must "show truly exceptional circumstances" and "introduce more than unsubstantiated declarations." Jones v. Hadican, 552 F.2d 249 (8th Cir. 1977)(cited in Schuch, above)(quoting Stifel v. Hopkins, 477 F.2d 1116 (6th Cir. 1973)). At the pleading stage, the prisoner "must allege facts sufficient to raise a substantial question about the prisoner's intention to acquire a new domicile." Id.; accord Roberts v. Morchower, 1992 WL 42885 at *1 (4th Cir. Mar. 4, 1992). Significantly, the prisoner must not only show he is no longer a citizen of the state in which he resided prior to incarceration, but he must show intent to make the State in which he is now physically present his home.

From Plaintiff's own pleadings, it is clear that at the time he was incarcerated he was a citizen of either Washington, D.C. or Massachusetts. The presumption is that he remains a citizen

of either Washington, D.C. or Massachusetts. To rebut that presumption, he must "show truly exceptional circumstances" and "introduce more than unsubstantiated declarations." Jones v. Hadican, supra. A prisoner is "highly unlikely" to have state of mind necessary for domicile in state of imprisonment. Restatement (Second) Conflict of Laws 2d section 17 cmt. b. (1988 rev.).

Relevant factors for this Court to consider include "the prisoner's declaration of intentions, the possibility of parole . . ., the manner in which [he] has ordered his personal and business affairs, and any other factors that are relevant to corroboration of [the prisoner's] statements." Stifel v. Hopkins, 477 F.2d 1116 (6th Cir. 1973). "No single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." Garcia Perez v. Santaella, 364 F.3d 348 (1st Cir. 2004). The Courts favor ties that "could not easily be undone" over more easily established ties. Id.

In an attempt to rebut the presumption, Plaintiff states his current residence (at FCI Morgantown) is in Morgantown and that he has no other residence; his place of employment is at FCI Morgantown where is employed as a tutor; his only bank account is at FCI Morgantown; he was confirmed into membership at St. John's parish in Morgantown; and he pays taxes to West Virginia.

Plaintiff further states he has no other residences or property remaining; he cannot vote; he belongs to no community organizations; he has no current driver's license, and he has no automobile to register. He concludes: "Mr. Luellen is a citizen of and domiciled in West Virginia for now and the foreseeable future." Presumably, the "foreseeable future" is whatever remains of the 84 months Plaintiff is to serve at FCI Morgantown, because Plaintiff does not even state an intent to remain in West Virginia upon his release.

Domicile is determined at the time the suit is filed. Plaintiff is only in West Virginia due to

his assignment here by the Bureau of Prisons. He does not assert that he had ever been in this State before being incarcerated here, even for visits or vacations. He does not assert he has any friends or family or property in this State. The analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature. Here Plaintiff cites no contacts whatsoever with West Virginia (with the exception of FCI Morgantown and his membership in a local church), much less substantive ties that "could not easily be undone." Garcia Perez, supra.

Based on all of the above, the undersigned United States Magistrate Judge finds Plaintiff has not shown "truly exceptional circumstances" to rebut the presumption that his domicile is in the District of Columbia or Massachusetts. Jones v. Hadican, supra. Plaintiff has therefore not shown that Defendants are knowingly engaged in on-going tortious conduct targeting a party domiciled in West Virginia.

The third prong- that the exercise of personal jurisdiction be constitutionally reasonable-permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Such factors include: (1) the burden on the defendant of litigation in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. See Burger King, 471 U.S. at 477, 105 S.Ct. 2174 (citing World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. 559).

The undersigned finds only factor (3) favors Plaintiff. The burden on Defendants litigating in West Virginia is great. Further, not only would the Defendants themselves be forced to travel to West Virginia for hearings and trial, but so, presumably, would every witness, as every act by the

defendants took place in the Eastern District of Virginia and all witnesses would be either there or in Washington, D.C., where he was arrested. The undersigned cannot find West Virginia has any interest whatsoever in adjudicating the dispute, which consists entirely of State claims based on Virginia law. Litigating the case in West Virginia is by no means efficient, and the undersigned can find no interest in West Virginia in the resolution of Virginia State law claims brought by a citizen of Washington, D.C. against citizens of Virginia. Finally, although social policies disfavoring slander, perjury, defamation and fraud, especially causing illegal incarceration would be of interest to any state, West Virginia has no interest in a Washington D.C. citizen's state claims against Virginia citizens all of which are based on substantive acts which took place in Virginia.

For all the above reasons, the undersigned United States Magistrate Judge finds Plaintiff has failed to establish minimum contacts sufficient to support the exercise of personal jurisdiction over Defendants. In light of this conclusion, the undersigned must also necessarily find that its exercise of jurisdiction over Defendants would fail to comport with traditional notions of fair play and substantial justice.

**Motion for Sanctions**

Having found this Court has had no personal jurisdiction over Defendants from the outset of the case, the Court also **DENIES** Plaintiff's Motion for Sanctions under Fed.R.Civ.P.11. The imposition of sanctions, even if the Court were to find a violation, is totally discretionary. Here, none of what Plaintiff alleges to be "false and misleading statements" by Defendants had any bearing on the Court's determination regarding personal jurisdiction. Even if Defendants' statements regarding insufficient service of process were untrue, Defendants did not base their arguments regarding lack of personal jurisdiction on insufficient service. Nor was the substitution of counsel

any consideration in the resolution of the issue of personal jurisdiction. Plaintiff claims Defendant's counsel signed a certificate of service allegedly indicating he served Plaintiff when he did not. A review of the docket, however, indicates there was in fact no certificate of service filed. Instead, Defendants filed a (proposed) Stipulation and Order of Substitution of Counsel for the District Judge's signature, which proposed order expressly directed the clerk to transmit a copy to Plaintiff. The docket also indicates District Judge Irene M. Keeley signed the Stipulation and Order and the Clerk mailed a copy to Plaintiff by Certified Mail. In fact, Plaintiff accepted service of the signed Stipulation and Order on May 19, 2011. Most importantly, however, the undersigned did not consider either of these issues in resolving the Motion to Dismiss and, finding no personal jurisdiction over the defendants, declines the request for sanctions.

## ORDER

For reasons not limited to the above, Plaintiff's Motion for Sanctions [Docket Entry 63] is **DENIED**. For reasons appearing to the Court, Defendants' request for sanctions against Plaintiff regarding his motion is also **DENIED**.

As already stated, Plaintiff's "Motion for Limited Jurisdictional Discovery" [Docket Entry 44] is **DENIED**.

## RECOMMENDATION

For all the above reasons, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** Defendants' "Motion to Dismiss for Lack of Personal Jurisdiction" [Docket Entry 37] be **GRANTED** and that this matter be **DISMISSED** and stricken from the Court's docket.

Any party may, within fourteen (14) calendar days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the

portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel and by Certified Mail, Return Receipt Requested, to Plaintiff *pro se.*

Respectfully submitted this 5th day of July, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE